## GRAVELLE *v.* MINNEAPOLIS & ST. LOUIS RY. CO.

*(Circuit Court, D. Minnesota.)*

1. NEGLIGENCE.

    Negligence is the failure to exercise that degree of caution which a man of ordinary intelligence would exercise under the circumstances of a particular case.

2. CONTRIBUTORY NEGLIGENCE—ACTION DEFEATED.

    In case of personal injuries inflicted by railroad cars in motion, where the plaintiff's negligence contributed to his injuries, he cannot recover.

3. INJURIES THROUGH NEGLIGENCE OF A FELLOW-SERVANT.

    A railroad company is not liable for injuries inflicted on a person through the negligence of a fellow-servant of such person. Fellow-servants or co-servants, within this rule, are persons engaged in the same common service under the same general control. Where one servant is invested with control or superiority over another with respect to any particular part of the business, they are not, with respect to such business, fellow-servants within the meaning of the law.

4. EMPLOYER AND EMPLOYE—CONTRACT—LEGAL IMPLICATIONS.

    When a person enters into the service of another he assumes all the ordinary risks incident to the employment, and the employer agrees, by implication of law, not to subject the servant he employs to extraordinary or unusual perils or dangers, and that he will furnish the employe with reasonably safe and convenient machinery with which to perform his duties.

5. RAILROAD COMPANIES—PRESUMPTIONS AS TO EMPLOYES AND MACHINERY.

    The law presumes that railroad companies employ for their service persons of reasonable competency and fitness for their duties; and this presumption exists till the company is notified of their incompetency and unfitness. The same rule substantially applies to the question of the sufficiency of the machinery employed.

At Law.

Action for damages for personal injuries sustained by an employe through alleged negligence of a railroad company. Pending on motion for new trial.

*C. K. Davis* and *A. B. Jackson,* for plaintiff.

*J. D. Springer,* for defendant.

McCRARY, C. J., (*charging jury.*) The case which you are now called upon to consider, so far as the facts are concerned, is one in which Mr. Jeremiah Gravelle, the plaintiff, alleges that he has been injured in his person by the negligence of the defendant. You will see at a glance that the main question is a question of negligence, and that question you are to consider in the light of what I shall say to you concerning the law.

The plaintiff claims that he was employed as a laborer in the yards of the defendant, the Minneapolis & St. Louis Railway Company, at

Minneapolis; that while in their employment (I think it was some time in November, 1879) he was ordered by the assistant yard-master of the company (Mr. McCummings, I think, is the name) to make a coupling between an engine and tender and a certain freight car standing upon one of the tracks in that yard. He claims that, under the circumstances of the case, this was a duty which was extraordinarily and unusually dangerous and hazardous, and that on account of the negligence of the assistant yard-master, Mr. Cummings, in ordering him to make the coupling under the circumstances, and in failing to give an order or signal to check the speed of the approaching engine, he was injured without any fault or negligence on his own part. He also claims that the assistant yard-master, and the engineer who was in charge of the engine and tender, were negligent, unskilful, and unfit persons for their places, and that the defendant, the railroad company, had knowledge of the fact. He also claims that the machinery was not in proper condition, because the tender which he was required to couple to the freight car had no coupling link upon it. These are the facts upon which the plaintiff relies, which he claims to have established before you.

On the part of the defendant it is claimed, in the first place, that their agents were not negligent; that the engine and tender were approaching the freight car at about the usual rate of speed, and not at an extraordinary or dangerous rate; that the duty which the plaintiff undertook to perform in that case was not unusually hazardous or dangerous; and that there was no negligence on the part of the assistant yard-master in ordering him to do the duty under the circumstances, nor on the part of the engineer in running the engine up to the freight car. Defendant further claims that if there was negligence on the part of any of its individual agents, it was negligence of a fellow-servant employed in the same common service with the plaintiff, and that, therefore, the plaintiff cannot recover; the law being that the employer, the railroad company, is not liable, is not responsible, for injuries which one of its servants may receive on account of the negligence of another fellow-servant employed in the same common service with the party injured.

As to the defect in the machinery by reason of the absence of the link from the tender, the defendant claims that that was not a defect; that it was not unusual to use tenders that had no links attached to them; that it was common to leave them inside the tender or lying upon the track to be picked up and used as occasion may require.

These are the issues upon which you have heard the testimony. It

is your duty to consider it impartially and carefully, and to reach your conclusion upon the questions of fact and find a verdict, in the sight of the law as I shall now endeavor to explain it.

As I have already said, the controlling question is a question of negligence. But I should have said to you, however, that another defence of the defendant is that the plaintiff himself was guilty of negligence which contributed to his injury. Negligence is the failure to exercise that degree of caution which a man of ordinary intelligence would exercise under the circumstances of a particular case. The degree of care which is required of a man is measured by the circumstances by which he is surrounded, by the nature of the duties in the performance of which he is engaged. What would be ordinary care and prudence under one set of circumstances, might be negligence under another set of circumstances. As, for example, if a person is traveling along the public highway, with his vehicle, at an ordinary rate of speed, and no unusual circumstances to excite caution or induce care, in that case a very slight degree of care may be considered sufficient; while, on the other hand, if he is engaged in coupling cars upon a railroad, where there are a great number of cars and engines, the very nature of his employment requires greater care and attention than would be required under other circumstances.

Your first inquiry, then, may be as to whether the plaintiff was guilty of any negligence or any want of ordinary care and prudence on the occasion of the accident. If you find that he was guilty of negligence which contributed to his injury, the law is that he cannot recover, and you will not be required to go any further with your investigations. But if you find him not guilty of contributory negligence you will then proceed to consider the other points.

You must find that the accident and injury were the result, not of the negligence of a fellow-servant engaged in the same common service with the plaintiff. And it is necessary for me to explain to you what is meant by the rule which I have stated. A fellow-servant or co-servant, within the meaning of this rule, is a person engaged in the same common service under the same general control of the party injured. I believe it is not contended in this case that there is any question but that the engineer upon the engine that was attached to the tender and the plaintiff were fellow-servants; so that the question, if you come to it, will be a question as to whether the accident was caused by the negligence of the assistant yard-master; for it is claimed that he was not a fellow-servant within the meaning of the rule which I have given you. But I will come to that presently.

After you have considered the question of contributory negligence, you will then inquire whether the braking (coupling?) was done under the direction of the assistant yard-master, and in his presence, so that it was his duty to regulate the movements of the approaching engine. And here there is some conflict in the testimony, and a question of fact for you to decide.

It is claimed by the plaintiff that the assistant yard-master, Mr. McCummings, was present and gave the order to do the coupling, and was there as the engine and tender approached the car, so that if it was coming at a rate of speed dangerously rapid he must have seen it, and it was his duty to have given a signal to check or slacken the speed. On the part of the defendant the claim is that Mr. McCummings gave a general order to the crew, of which the plaintiff was one, to make the coupling; that having given it he walked down the track and went off about his business in some other part of the yard, and that he was not present at the time the engine came down to be attached, so that he was not directing the coupling, and that it was not his duty under such circumstances to notice the rate of speed at which the engine was approaching, or give a signal to check the engine if it was approaching too fast.

Of course you will inquire whether the engine and tender did approach at an unusual rate of speed. If you find that it did not; that it came up at a usual rate of speed; and that everything was done in the usual way,—then there was no extraordinary peril, and no negligence on the part of the assistant yard-master, and no negligence on the part of the defendant, unless you find negligence on account of the absence of the link. But we will come to that afterwards. But if you find that there was negligence in the manner in which the engine and tender were brought up to be coupled onto the freight car, then you will consider this question: as to whether Mr. McCummings was there present, and giving directions as to the manner of coupling, so that it was his duty to see what was going on, and give directions to check the speed of the approaching engine. If you find that he was there, and giving directions, and that his attention was directed, or ought to have been directed, to the approaching engine, and that he failed to give the proper direction to check its speed, and if you find that it was negligence on his part which resulted in injury to the plaintiff without any fault on the part of the plaintiff, then you will come to this question which I have stated to you: whether Mr. McCummings, the assistant yard-master, was within this rule which I stated,—that is, whether he was a fellow-servant engaged in the

same common service with the plaintiff, or whether he was there on the part of the company. And you may be governed by the following rule: "Fellow-servants, within the meaning of the law, are such as are employed in the same service, and subject to the same general contract. But if a railroad company sees fit to invest one of its servants with control or superior authority over another with respect to any particular part of his business, the two are not, with respect to such business, fellow-servants within the meaning of the law. One is, in such a case, subordinate to the other, and the superior stands in place of the corporation." So, if you find, in your investigations, that the plaintiff was injured by the negligence of its assistant yard-master, then you will inquire whether the plaintiff was a subordinate with respect to the duties which he was then performing,—if he was under the control and direction of the assistant yard-master, by the rules of the railroad company, in the performance of the duty which he was then performing. If so, I charge you as a matter of law that they were not fellow-servants within the meaning of the rule.

Now there is another question in the case upon which there is, perhaps, some conflict of testimony. It is alleged by the plaintiff that these two officials, the assistant yard-master and the engineer in charge of the engine and tender, were both negligent, incompetent, and unfit persons for the positions which they held, and that this was known to the defendant; and that it was guilty of negligence in employing them, or continuing to employ them; whereby the plaintiff has a right to complain that he was injured on account of that negligence. Upon that subject the law is that when the plaintiff entered the service of the railroad company he assumed all the ordinary risks incident to the employment upon which he entered. He knew that he was entering upon a dangerous business, and therefore assumed all the risks ordinarily incident to the performance of the duties that he undertook to perform. On the other hand, the railroad company agreed, by the implication of the law, that they would not subject him to extraordinary or unusual perils or dangers; and, among other things, they agreed that they would employ for service with him persons of reasonable competency and fitness for their duties, and he had a right to expect that. The law presumes, however, that the railroad company, in employing its servants, exercised usual care and prudence, and if the plaintiff seeks to recover on the ground that it failed in that respect, it is incumbent upon him to prove this: In the first place, that these servants were incompetent and unfit persons; and, in the second place, that the railroad company had notice

of that, either when it employed them, or at some time before the happening of this injury to the plaintiff. If there is no proof before you that the railroad company had any such notice; if at the time of employing these persons they had no reason to believe that they were incompetent,—then the plaintiff cannot recover upon the ground that these parties complained of were known to be incompetent and unfit persons.

The same rule substantially applies to the question of the sufficiency of the machinery. The railroad company agrees, when they employ a man to work for them, that they will furnish him with reasonably safe and convenient implements and machinery with which to perform his duties. If they fail in this, and the employe is injured on that account, and without fault of his own, they are liable. As I have said before, the only question here with regard to the machinery is whether the absence of the link from the tender is such a defect in the machinery as the plaintiff had no reason to apprehend; whether it was an unusual thing, and in consequence of it the plaintiff was subjected to extraordinary dangers and perils. If you find that it was not unusual to have the links left off the tender, then the plaintiff, of course, was bound to be advised of that fact, and cannot recover upon that ground. But if you find that it was the duty of the railroad company always to have the link on the tender, and that the failure to do that was to leave the machinery in an unusually dangerous condition, the fact would give the plaintiff the right to recover.

At the request of the defendant's counsel I instruct you to find specially upon the following questions:

(1) Was the assistant yard-master a competent person for that position when employed and put to work by the defendant as such assistant yard-master? (2) At the time of the injury in question was the assistant yard-master an unsuitable and incompetent person for that position, to the knowledge of the defendant? (3) When employed and put in charge of the engine in question, was the engineer, Mr. Dean, a competent person for that position? (4) At the time of the injury in question was the engineer in charge of the engine in question an incompetent and unsuitable person for that position, to the knowledge of the defendant?

If you find for the plaintiff, you will come to the question of damages. This is a question very largely in your discretion, limited only by the duty which devolves upon you not to find excessive or unreasonable damages. You will, if you come to this question, have to consider the nature and extent and permanency of the plaintiff's in-

juries; his ability to earn a living since the receiving of the injury in question as compared with his ability before that time; his pain and suffering, both mental and physical. There is no testimony as to any expenses for surgeon's services here, and therefore you will not take them into consideration; but, upon all the testimony before you, if you find for the plaintiff, you will find in such a sum as you shall think reasonable and proper.

Then followed directions as to the forms of the verdict and special findings, and request to the jury to canvass one another's views thoroughly.